## Case No. 5,308.

### The GENERAL C. C. PINCKNEY.

[Blatchf. Pr. Cas. 278.][1]

District Court, S. D. New York. Dec. 18, 1862.[2]

PRIZE — BLOCKADE — PURCHASE OF PROPERTY IN ENEMY COUNTRY BY LOYAL CITIZEN.

1. Vessel and cargo condemned as enemy property and for a violation of the blockade.

2. The master and owner of the vessel, a resident of Charleston, S. C., purchased her there during the war, and loaded her with the produce of the country, and brought her through

---

1 [Reported by Samuel Blatchford, Esq.]
2 [Reversed in Case No. 5,309.]

the blockade of that port, she having papers issued to her by the enemy: *Held*, that she and her cargo must be condemned, and that a claim by the master that he had always been a loyal citizen of the United States, and had purchased the vessel and cargo as an investment, in order to withdraw himself and his family and property from the enemy country, could not be considered in this court.

3. A loyal citizen of the United States is disqualified from appearing in a prize court to question the legality of the seizure of his property acquired during war in an enemy country by trade with the enemy.

In admiralty.

BETTS, District Judge. This vessel, laden with 94 bales of cotton and 10 barrels of rosin, came out of the port of Charleston under the rebel flag, and was captured about 50 miles from Charleston bar, May 6, 1862, by the United States steamer Ottawa, and sent to this port for adjudication. The papers and proofs and pleadings, consisting of a libel, filed June 4, and a claim and representation by the master and owner, filed June 24, 1862, were submitted to this court for decision, November 26, 1862, with an argument or importunate remonstrance on the part of the owner of the vessel and cargo, by his counsel. The vessel was registered to Herman Koppel, a citizen of the Confederate States, April 18, 1862, having been conveyed to him in Charleston by a bill of sale, by the former owner, a citizen and resident of that place, on the 7th day of April, 1862. These papers, and the crew list for the present voyage, and the appointment of the said Koppel as master of the vessel, were authenticated by documents received by the purchaser from the rebel government at Charleston, and delivered up on the capture of the vessel. No fact impeaching the foregoing character of the transaction, that the vessel was purchased during the war and the blockade, from an enemy owner, in the enemy country, and was laden with the produce of the enemy, is in evidence in the case. But the claimant of the vessel and cargo, he being also master of the vessel, suggests and claims, through his counsel, as matter of protection against the arrest, that his fealty to the Confederate States was simulated and illusive; that he never was a subject of that government, nor willingly associated with it; that he is a native of Prussia, and loyal, in sentiments, to the United States government; and that the vessel and cargo were purchased by him, with the proceeds of his own industry, with intent solely to rescue such proceeds from the rebel government, and withdraw himself and his family and property from that confederacy.

This court can deal with the matter solely upon the principles of prize law, applicable to a state of facts of this similitude. If any relief exists anywhere in behalf of the claimant, it must be obtained from the United States government, the party injured by his misconduct, and the claim, on the foundation

assumed for him, cannot be considered in this tribunal. 1st. His own written acts, supported by his oath, prove the vessel and cargo to be property of the enemy state. 2d. He withdrew it covertly from a blockaded port in time of open war. 3d. He was, at the time of procuring the property, and had been for several preceding years, a resident in the enemy country, in solidarity with its industry and interest. 4th. He assumed allegiance to that government by covering his property with the protection of the Confederate flag, and of ship's documents from the enemy government—acts which disqualify him from appearing in this court to contest the legality of the capture. 5th. Even if he could justly maintain the assertion that he was, in sentiment, a loyal subject of the United States, he would stand disqualified from appearing in a prize court to question the legality of the seizure of his property acquired during the war, in an enemy country by trade with the enemy. 12 Stat. 319. The law upon most of the foregoing points has been so repeatedly cited and relied upon in this court, in suits recently heard and decided, that the grounds on which it is supported need not now be further recapitulated. Decree of condemnation and forfeiture.

This decree was reversed, on appeal, by the circuit court. [Case No. 5,309.]